1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No.: 1:22-CR-00330 JLT SKO |
|---|---|
| Plaintiff, | ORDER DENYING MOTION FOR CHANGE OF VENUE |
| v. | (Doc. 55) |
| RAUL TITO PEREZ, | |
| Defendant. | |

The indictment alleges that in 2020, Mr. Perez purchased "significant quantities of methamphetamine and heroin," which he paid for, "at times" with firearms. (Doc. 1; Doc. 55 at 2) The government contends that a courier delivered the drugs to Perez in Glenn County. (Doc. 55 at 2) The courier lived in Merced County, where he maintained the stash house where he stored and packaged the drugs and guns. (Doc. 58 at 2) The drug supplier, who negotiated the sales and arranged for the deliveries, lived in Kings County. *Id*. The government asserts that the supplier ran his operation from Kings County using text messages to direct "the transportation of drugs and guns" and these texts involved the transactions with Perez. *Id*.

By the time the grand jury issued the indictment in this case, Mr. Perez had moved to Oregon. (Doc. 55 at 2) He seeks to have the matter transferred to the Sacramento courthouse because it is "more accessible to him than the Fresno Court." *Id.* Despite the inconvenience to Mr. Perez, the motion is **DENIED**.

I.      **Background**

The government alleges that in 2020, Mr Perez was in contact with a large-scale supplier of drugs who resided in Kings County. (Doc. 1 at 1-2; Doc. 58 at 2) The supplier sent out "tens of thousands" of text messages related to his drug trafficking operation, including sending and receiving text messages from Mr. Perez.  (Doc. 58 at 2) The supplier worked with a courier, who stored drugs for the supplier and conducted storage and packaging activities related to drugs and guns in Merced County. *Id*. Mr. Perez contends that the activities attributed to him occurred in Orland or Dunnigan, which are in Glenn and Yolo Counties respectively. (Doc. 55 at 2) He argues that because he now lives in Oregon, travel to Fresno is burdensome and, though the USMS has provided the cost of his one-way travel to Fresno for each visit and provided him a subsistence allowance, he must pay for his cost of returning home and the cost of his wife's travel. (Doc. 50; Doc. 52; Doc. 55 at 3; Doc. 62 at 4-5; Doc. 65)

II.     **Analysis**

A defendant has no right to have his case proceed in the district where he resides. *Platt v. Minnesota Min. & Mfg. Co.*, 376 U.S. 240, 245 (1964). A defendant has no right to have his case proceed in the courthouse closest to his home. *McNealy v. Johnston*, 100 F.2d 280, 282 (9th Cir. 1938) ["It should be noted, however, that the constitutional provisions relate only to the 'state and district' where the offense is committed. There is no constitutional prohibition against the trial being had in a division of the district other than the division in which the offense was committed."] The Ninth Circuit has reiterated, "whether the trial is in one or another division of the same district is a question of venue and is not jurisdictional and that a trial, judgment and sentence in one division is not invalid or void because the crime was committed in another division in the same district." *Carrillo v. Squier*, 137 F.2d 648, 648 (9th Cir. 1943).

Initially, in his motion for change of venue, Mr. Perez argued that Local Rule 120(f) favors transfer of this prosecution to the Sacramento courthouse because it is closer to his home in Oregon and because the Fresno courthouse has an excessive caseload of criminal matters. (Doc. 55 at 2) In his reply papers, he also asserted that Federal Rules of Criminal Procedure 18 justifies the transfer. Both Rules support and refute Mr. Perez's arguments.

Rule 18 provides, "the government must prosecute an offense in a district where the offense was committed. The court must set the place of trial within the district with due regard for the convenience of the defendant, any victim, and the witnesses, and the prompt administration of justice." Likewise, Local Rule 120(f) reads, "Whenever in any action the Court finds upon its own motion, motion of any party, or stipulation that the action has not been commenced in the proper court in accordance with this Rule, or for other good cause, the Court may transfer the action to another venue within the District."[1]

The Eastern District of California is a single-division district, though it has several places for holding court, including Fresno and Sacramento. There is no serious dispute that filing this case in Fresno complies with Rule 18's requirement that the prosecution occur in the district where the offense was committed. Mr. Perez admits that a conspiracy may be charged wherever conspiratorial actions occurred. (Doc. 62 at 2) Indeed, the Ninth Circuit has agreed with sister-circuits that using a telephone—no matter whether the defendant initiated the call and no matter whether the defendant knew where the coconspirator was located— "'effectively propels not only his voice but the scheme itself beyond his own physical location into that of the person with whom he is speaking.'" *United States v. Gonzalez*, 683 F.3d 1221, 1226 (9th Cir. 2012)[2], quoting *United States v. Rommy*, 506 F.3d 108, 122 (2d Cir.2007). *Gonzalez* noted, "while the venue requirement protects the accused from 'the unfairness and hardship' of prosecution 'in a remote place,' [Citation] "the constitutional text makes plain [that] unfairness is generally not a concern when a defendant is tried in a district 'wherein the crime shall have been committed.'" *Id*. quoting *Rommy* at 119.

The acts attributed to Mr. Perez, the courier and the supplier, all occurred within this District. Thus, without doubt, venue is proper in this District. Even still, Mr. Perez asserts that because he is the lone defendant in this case, the locations of the actions attributed to him are most important in determining where the trial should proceed. Because his acts are alleged to have occurred in Glenn County, he claims that the Sacramento courthouse is the more appropriate location. Though the Court

---

[1] Because Rule 18 and the "good cause" standard of the Local Rule overlap, the Court refers here, mostly, to Rule 18.

[2] Though *Gonzalez* analyzed 18 U.S.C. § 3237(a), its rationale applies here.

is not unsympathetic to this position, neither Rule 18 nor Local Rule 120(f) determine that the defendant's convenience controls.

First, the Court acknowledges that Mr. Perez lives 170 miles closer to Sacramento than to Fresno. (Doc. 58 at 2) Even still, his home in Oregon is "over 500 miles" from Sacramento. *Id*. Thus, it is not clear how Sacramento is convenient to the defendant rather than, at most, merely closer to his home. He indicates that he has family in Sacramento and Orland, though how this reduces his inconvenience is not explained. His lodging costs and food costs are paid by the USMS, so having family members close by does not decrease his inconvenience. Thus, this speaks to Mr. Perez's preference rather than to his convenience.

On the other hand, Mr. Perez argues that if during trial, a witness testifies about a location where a transaction occurred in Orland and this testimony is incorrect[3], he would be prejudiced because his investigator would have to travel 272 miles to gather photos or other evidence to impeach the witness, rather than the 102 miles that would be required from the Sacramento courthouse. Seemingly, proper trial preparation would alleviate such a risk, but if the defense encountered an evidentiary situation <u>that could not have been anticipated before trial</u>, a short recess of the trial to allow the investigation, would seem to be the remedy rather than justifying a transfer of venue now.

Second, despite Mr. Perez's argument to the contrary, Rule 18 requires the Court to consider the convenience of the defendant *and* the witnesses. The fact that witnesses are government employees, confidential sources or conspirators, does not mean that their convenience is ignored by Rule 18. Notably, the government reported that it expected to present trial witnesses who reside in the Fresno area.

Third, this case has been pending in Fresno for about two years. Though the Court does not suggest that this factor is weighty, it *does* inform the Court's decision because it suggests that the inconvenience to Mr. Perez posed by the proceeding occurring in Fresno rather than Sacramento, is

---

[3] The example proffered is if a witness testifies about a location that doesn't exist, it more be more difficult for an investigator to travel there to document the inaccuracy. (Doc. 62 at 4) The is perplexed, however, as to where the investigator would go if, in fact, the location didn't exist. In any event, when the Court inquired about evidence that could not be known to the parties before trial due to, for example, the use of cooperators, there appeared to be no such evidence that would be presented at trial. Thus, the suggestion of prejudice is based on speculation, which is not grounded in the discovery produced.

4

1  not more than minimal. Fourth, moving the proceeding to Fresno would require either a change of
2  attorney for Mr. Perez or it would impose increased costs on CJA counsel to attend the proceedings
3  and trial in Sacramento. Because counsel does not suggest he would withdraw from the case, the Court
4  presumes that this would not occur. On the other hand, any increased cost imposed by the trial
5  occurring in Sacramento with current counsel, bears only minimally on the Court's considerations.
6  Finally, though the Court appreciates the concern for its caseload, and acknowledges that it carries
7  more criminal cases than any of the district judges in Sacramento, as necessary, the Court will ensure
8  that this matter is tried in a timely fashion.[4]

9       Based upon all of these considerations, the Mr. Perez's motion for transfer of the action to
10 Sacramento is **DENIED**.

12 IT IS SO ORDERED.

13     Dated:   **March 1, 2025**

14                                                UNITED STATES DISTRICT JUDGE

---

[4] Because this case has been set for a change of plea since September 2023 (Doc. 21) and only recently was there an indication that the defendant wished to proceed to trial (Doc. 63), there is no trial date currently set. In the event the trial must proceed when the undersigned cannot preside over it, the Court will take steps to ensure that the trial goes forward either with the use of a visiting judge or by moving the trial to Sacramento. However, because this situation has not presented itself, the fact that there *may* be a need for the assistance of other judicial resources, this does not bear on the Court's decision making at this time. If it did, it would have to transfer all of its cases to Sacramento.

5